# Koch *v.* The State.

*Indictment for Forgery.*

1. *Forgery; admissibility of evidence.*—On a trial under an indictment for forgery, evidence as to how far one of the witnesses examined on the trial, and his mother, lived from the person whose name was forged, is irrelevant to any issue involved in the case, illegal and inadmissible.

2. *Same; same; general objection.*—On a trial under an indictment for forgery, where a person whose name was forged testifies as a witness that upon being given the forged instrument he procured a warrant against the defendant and went with officers to where he lived but did not find him, his further statements that "we went around to look for him," and that "we just hunted around in the country," and "there were two or three of us in the crowd," should not be excluded on the general objection of defendant; such statement not being patently illegal and irrelevant, but tending to show that the defendant had fled from consciousness of guilt.

3. *Same; admissibility of memorandum book.*—Where on a trial under an indictment for forgery, it is shown that the defendant had a memorandum book in his possession when arrested, in which appeared certain dates in his handwriting, and the evidence further tended to show that a leaf which had been torn from said book was the leaf on which the alleged forged order was written, the dates entered in said book and that part of the book from which the leaf had been torn are admissible in evidence.

4. *Evidence of character; inquiry as to person not examined, inadmissible.*—In the examination of a witness, it is improper to ask him if he knew the character of another person in the neighborhood in which he lived, when such person has not been examined as a witness in the case, and is not shown to have had any connection with the case; the inquiry into the character of such person being entirely irrelevant.

5. *Same.*—Where, after a witness has shown his competency to testify as to the character of another witness, and upon being asked whether it was good or bad, his reply that "it is nothing, his mother before him had none," is properly excluded; the answer should have been limited to the character of the witness inquired about, and what was said about the character of the mother rendered the whole answer objectionable.

[Koch v. The State.]

6. *Judicial notice; what day of the week certain day of the month falls upon.*—Courts take judicial notice upon what day of the week a certain day of the month falls; and it is not error for the court to instruct the jury that a certain day of the month was a designated day of the week.

7. *Sufficiency of evidence; charge to the jury.*—In a criminal case, where the evidence for the State and the defendant is in conflict, a charge which instructs the jury that "If the jury do not believe the evidence, they will find the defendant not guilty," is properly refused. (*Seibold v. Rogers*, 110 Ala. 445, asserting the contrary proposition, overruled.) McCLELLAN, J., dissenting.

8. *Charge to the jury; consideration of dates shown by memorandum books introduced in evidence.*—In a trial under an indictment for forgery, where a memorandum book found upon the defendant when he was arrested, and which contained certain dates in defendant's handwriting, is introduced in evidence, and there is evidence tending to show that the alleged forged order was written on a leaf torn from said book, a charge is properly refused which instructs the jury that they "will not read any part of the book in evidence except the dates, and that the dates are not evidence of their own correctness, nor are they evidence of anything else."

9. *Charge to the jury; no error to refuse those which are mere repetitions of charges given.*—The court commits no error in refusing to give charges requested which are mere repetitions of charges already given, or contain substantially the same propositions involved in the charges already given; and this is true even though the principles announced in said charges are abstractly correct.

10. *Forgery; what necessary to constitute the crime.*—In order to authorize a conviction of forgery, it is not necessary that the evidence should show that the defendant himself wrote the forged instrument; but if, with intent to utter and publish it, he procures another person to write it, and afterwards utters and publishes it as genuine, he is as guilty as if he had written it with his own hand.

APPEAL from the Circuit Court of Marshall.

Tried before the Hon. JAMES A. BILBRO.

The appellant was indicted, tried and convicted for forgery. The instrument which the appellant was charged with having forged was in words and figures as follows: "Nov. 17, 96. Mr. A. G. Henry Dear Sir I never Did ask you for a favor and you failed to help me. Mr. Henry I wannt you to sind $5.00 Dollars until Saturday I can Get me a Good cow for five Dollars and I want you to sind it if you please and oblige [Signed.] his mark x J. F. Burson."

J. F. Burson, whose name was signed to the forged instrument, testified that he had not given the defend-

ant any authority to sign his name to any paper, and that he did not sign the paper alleged to have been forged, and did not authorize any one else to sign his name thereto.

One Will Nearen, a witness for the State, testified that he, the witness, was the mail rider; and that as he was going along the road to Guntersville, one Tom Green handed him the paper and asked him to give it to Mr. Henry; that without unfolding the paper or looking at it, he carried it to Guntersville and delivered it to one of Mr. Henry's clerks.

Tom Green, as a witness for the State, testified that the defendant gave him the paper which he handed to the witness, Will Nearen, and that in accordance with the defendant's instructions, he, Green, without examining or noticing the paper, delivered it to Nearen, and asked him to give it to Mr. Henry.

It was shown that at the preliminary trial of the defendant, a memorandum book was taken from his pocket; and there was evidence for the State tending to show that the paper upon which the forged instrument was written was a page torn from such book. There was other evidence for the State tending to show that the defendant was guilty as charged.

The testimony for the defendant tended to show that he did not forge the instrument introduced in evidence; and the defendant himself testified that he never wrote the instrument, and had never seen it until it was shown to him upon the trial. The other facts of the case showing the rulings of the court upon the evidence, to which exceptions were reserved, are sufficiently stated in the opinion.

The court, in its general charge to the jury, instructed them, among other things, as follows: "I will charge you that the 17th day of November, 1896, was Tuesday." To this charge of the court the defendant duly excepted, and also separately excepted to the court's refusal to give, among others, the following written charges requested by him: (2.) "The court charges the jury that the fact that an entry of a day of a month and year is entered on any one or more places in or on the book offered in evidence is not evidence that it was entered there on that day." (3.) "The court charges the jury that they will not read any part of the book in

[Koch v. The State.]

evidence except the dates, and that the dates are not evidence of their own correctness, nor are they evidence of any thing else." (5.) "The court charges the jury, if from a consideration of all the evidence there is any reasonable uncertainty as to the truth of the testimony of the witness Tom Green, the jury should find the defendant not guilty." (6.) "There being no evidence before the jury that any one wrote the order at the instance of the defendant, it devolves upon the State to show to the satisfaction of the jury beyond all reasonable doubt that he wrote the order." (9.) "The court charges the jury that after a careful survey of all the evidence, the jury should be morally certain of defendant's guilt to the exclusion of all reasonable doubt that the defendant and no other but him wrote the paper in evidence." (10.) "The court charges the jury that circumstances may all point to the guilt of the defendant, yet the law holds him not guilty until you have had evidence strong enough to convince you to a moral certainty that defendant wrote the order." (11.) "The court charges the jury that if other persons had an equal opportunity to write and send the paper in evidence, the jury may look to this in connection with all the other evidence, and if a reasonable doubt exists as to who wrote the paper, the defendant is not proven guilty as the law requires, and should be found not guilty." (13.) "The court charges the jury that if Tom Green had an interest in convicting the defendant, then this may be a just foundation for a reasonable doubt and the acquittal of defendant." (14.) "The court charges the jury that if the evidence discloses the fact that the order went through the hands of several of the witnesses, the jury may look to this in weighing the evidence of these witnesses, and if a reasonable doubt arises in your minds from any part of the evidence as to who wrote the order, defendant should be acquitted." (15.) "The court charges the jury that the burden is on the State to show to the jury by evidence so convincing as to leave no other reasonable conclusion in their minds that defendant is the person who wrote the alleged order, or uttered it, and if from all the evidence the jury are not so convinced but are still in doubt as to whether defendant or some other person wrote it, the defendant should be acquitted." (16.) "If the jury are not morally

certain that defendant wrote the order he should be acquitted." (18.) "If the jury find from all the evidence that Tom Green handed a paper to Nearen, and Nearen handed it to one of Mr. Henry's clerks, and neither Tom Green nor Nearen looked at it, and if this is the paper before the jury, then the jury have a right to and should consider the fact, if it be a fact, in weighing the evidence of Tom Green."

LUSK & BELL, for appellant.—The court erred in refusing the first charge requested by the defendant. *Seibold v. Rogers*, 110 Ala. 438 ; *Childs v. State*, 58 Ala. 354. The other charges requested by the defendant should have been given.— *White v. State*, 103 Ala. 72 ; *Crofts v. State*, 95 Ala. 31.

WILLIAM C. FITTS, Attorney-General, for the State. The charges requested by the defendant were mere repetitions of charges which had been given at the request of the defendant. There was no error in the refusal to give such charges.—*L. & N. R. R. Co. v. Hurt*, 101 Ala. 34 ; *Murphy v. State*, 108 Ala. 10 ; *Allen v. State*, 111 Ala. 88.

HARALSON, J.—1. There is no merit in the 1, 2, 3 and 4 assignments of error, referring to the refusal of the court to allow the witness, Burson, on cross-examination by defendant, to answer the questions, how far Tom Green and his mother lived from him, Burson, last Fall, and who lived with them, etc. Green was afterwards examined as a witness by the State, but what the fact of how far he or his mother lived from Burson's in the Fall, and who lived with them, and whether any other persons of the family were at home at that time or not, had to do with the case, remains to be disclosed.

2. The alleged forged order by defendant on A. G. Henry, in the name of the witness, Burson, had been delivered by Henry to Burson, who testified further, that on the night of the day he secured the order from Henry, he procured a warrant from the justice of the peace, against defendant, and went with officers to where defendant lived, but did not find him, stating that "*we went around to look for him ;*" "*we just hunted around in the country. There were two or three of us in the crowd.*"

The two expressions quoted and italicized, were objected to, without assigning grounds of objection, and were admitted by the court. They were not patently illegal and irrelevant, and were admitted, no doubt, by the court as tending to show that defendant had fled or gotten out of the way from a sense of conscious guilt.

3. The evidence showed that a memorandum book was in defendant's possession when arrested, on and in which appeared certain dates and indorsements, which the evidence tended to show were in his hand-writing, and from which a leaf had been torn, which the evidence tended also to show, was the leaf on which the alleged forged order was written. The court allowed the jury to examine the book, and stated to them, that the only dates as to which the evidence tended to show were in defendant's hand-writing and the torn leaf, were allowed to go to them as evidence; that they were not to look at or consider anything else than the dates, and that part of the book from which a leaf had been torn on and in the book. The dates and indorsements admitted were each specified. To the ruling of the court admitting this evidence, the defendant reserved a general exception. There was no error in overruling it.—*Thornton v. The State*, 113 Ala. 43.

4. There was no error in refusing to allow W. J. Thompson to testify, " that he lived about a quarter of a mile from " Hannah Green and her son, Tom. Its relevancy is not perceptible.

5. There was no error in refusing to allow the same witness to answer the question, " If he knew the character of Jim Green in the neighborhood in which he lives?" No such witness as Jim Green had yet been examined in the case, and an inquiry into his character was entirely irrelevant.

The reply of the witness to the question as to the character of Tom Green, whether it was good or bad, that, "it's nothing, his mother before him had none," was not improperly excluded. What was said about the character of Hannah Green, the mother of Tom Green, was uncalled for and irrelevant, rendering the answer as a whole objectionable, though a part thereof, as to Tom Green's character, was unobjectionable. The reply should have been limited to Tom Green's character. The answer of a witness to a question, that he "had

[Koch v. The State.]

known Hannah Green since she was a little girl,"
was also entirely irrelevant and properly excluded.

6.  There was no error in the court saying in his
general charge to the jury, that the 17th day of Novem-
ber, 1896, was Tuesday.  The calendar shows that to be
a fact, that the jury and everybody else knew, the truth
of which required no proof.  It was in no way hurtful
to defendant.

7.  The first charge asked by defendant, "If the jury
do not believe the evidence, they will find the defend-
ant not guilty," was properly refused.  The charge is
obscure; its meaning difficult to interpret, and it was
calculated to confuse and mislead the jury.  The evi-
dence as to the guilt or innocence of the defendant was
in conflict,—that on the part. of the State, tending to
show beyond reasonable doubt, that the defendant was
guilty, and that on the part of the defendant,—includ-
ing the evidence he gave as a witness in his own.behalf,
—that he was not guilty; and yet the instruction pred-
icated the finding of the defendant not guilty, upon the
disbelief by the jury of the defendant's own evidence,
as well as that offered by the State.  Such a charge is
not in keeping with the well established procedure for
the proper determination of the issues in a cause, in
which a party always invites the jury to believe, and
avouches the truth of the evidence he introduces.  He
may not, therefore, in an instruction he asks, predicate
a verdict in his favor upon a disbelief by the jury of his
own evidence.

If what was said in *Seibold v. Rogers*, 110 Ala. 445,
upon a similar charge is opposed to what we have above
said, it must be to that extent modified, so as to con-
form to what is here decided.

8.  Refused charges 2 and 3 were manifestly bad.
The dates of the entries in the book, which were allowed
in evidence, if dates were important, were, if shown to
have been made by defendant, *prima facie* correct, and
they were certainly evidence, tending to show that
defendant owned the book, especially when it was found
in his possession.

Refused charges 4, 5, 7, 8 and 12 were requests for
instructions in substantially the same form as charges
given at the request of the defendant, with a mere varia-
tion in the use of words which in no way changed the

meaning or asserted different principles from those given; and the court was under no obligation to repeat these instructions whether the charges were abstractly sound or not.—*L. & N. R. R. Co. v. Hurt*, 101 Ala. 36; *Murphy v. The State*, 108 Ala. 10; *Allen v. The State*, 111 Ala. 80.

Charges 5, 6, 9, 10, 11, 14, 15 and 16 were properly refused. Waiving any other objection to them, they each proceed upon the mistaken postulate that it was necessary for a conviction of forgery for the State to show that defendant himself wrote the forged order; whereas, if with intent to utter and publish it, he procured another to write it, and afterwards uttered and published it as genuine, he would be as culpable as if he had written it with his own hand. Whether he did the one or the other, was for the jury to determine under all the evidence, and the evidence tended to establish his guilt under the one or the other hypothesis.—*Gooden v. The State*, 55 Ala. 178; *Elmore v. The State*, 92 Ala. 51; 3 Greenl. Ev., § 104. Charges 13 and 18 were argumentative, misleading and properly refused.

We find no error in the proceedings below, and the judgment and sentence of the court are affirmed.

Affirmed.

McClellan, J., dissents from what is decided in paragraph 7 of the opinion as to refused charge No. 1.

